# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| RALPH JOHNSTON, #402-674, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. PX-17-3222 |
| WARDEN RICKY FOXWELL, *Department of Corrections for Maryland*, ATT. GEN. BRIAN E. FROSH, CO D. MOORSE, and LIEUTENANT BURGESS, | * * * | |
| Defendants. | * | |

\*\*\*

## MEMORANDUM OPINION

Self-represented Plaintiff Ralph Johnston, an inmate presently incarcerated at the Dorsey Run Correctional Facility in Jessup, Maryland, brings this civil action pursuant to 42 U.S.C. § 1983 against Defendants Ricky Foxwell, Warden of Eastern Correctional Institution ("ECI"); the Department of Corrections for Maryland ("DOC"); Brian Frosh, the Attorney General for the State of Maryland; Correctional Officer D. Moorse; and Lieutenant Burgess. *See* ECF Nos. 1 & 6. Johnston claims that his previous confinement administrative segregation violated his due process rights. ECF No. 1 at p. 3. He seeks declaratory and injunctive relief[1] and monetary damages totaling $151,500. *Id.* at pp. 16, 27.

On February 7, 2018, Defendants filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. ECF Nos. 15, 18.[2] Johnston responded on February 23, 2018, and

---

[1] Along with his Complaint, Johnston also filed a Motion and Proposed Order for Preliminary Injunction & Temporary Restraining Order. ECF No. 3. For the reasons discussed below, that Motion shall be denied.

[2] Defendants filed two identical copies, one of which was sealed along with an exhibit to the Motion. *See* ECF Nos. 15, 18, 19. The two identical Motions shall be considered as one.

supplemented his response on March 1, 2018.[3] ECF Nos. 23, 25. After review of the record, exhibits, and applicable law, the Court deems a hearing unnecessary. *See* Local Rule 105.6 (D. Md. 2016). Defendants' Motion, construed as a Motion for Summary Judgment, shall be granted.

I.  **Background**

According to Defendants, Johnston was assigned to Southern Maryland Pre-Release Unit ("SMPRU") from October 7, 2016 until January 4, 2017, when he was transferred to Brockbridge Correctional Facility ("BCF") and placed on administrative segregation. ECF No. 18-2.[4] As this Court previously summarized:

> [Johnston] asserts that he did not receive a disciplinary report, an administrative hearing charging him with any infractions, or written notice of the reason for his placement on administrative custody prior to his transfer. Plaintiff submits that this assignment occurred based on the "vague and amorphous" fabricated statements of an informant. ECF No. 1.
>
> Plaintiff complains that his segregation amounted [to] isolation or placement in a special housing unit (SHU). Plaintiff maintains that he is or was allowed out of his cell for only 30 minutes daily from Monday through Friday, has no outdoor recreation and is not permitted to visit the library, gym, medical clinic, clothing and bedding exchange, or "culinary unit." He contends that his legal papers were confiscated and he was denied access to representation. Plaintiff further complains that he was placed with "members and groups of gang organizations." He alleges that the cell had insufficient ventilation and the conditions of his cell caused him physical and psychological injury. ECF No. 1 at 18-20.

ECF No. 6, pp. 2-3 (footnote omitted).

Administrative segregation is a special status used to, among other things, house inmates

---

[3] Johnston also filed a Motion for Default Judgment on February 6, 2018, arguing that Defendants failed to timely respond to the Show Cause Order issued by the Court on November 8, 2017. ECF No. 12. Contrary to Johnston's allegation, however, Defendants responded timely on December 5, 2017. ECF No. 9. Johnston's Motion for Default Judgment shall therefore be denied.

[4] All citations to filings refer to the pagination assigned by the Court's electronic docketing system.

who require close supervision or segregation from the general population. ECF No. 18-5, p. 10. It is used to ensure the safety and security of the facility, staff, inmate, or general population. *Id.*

According to Defendants, Johnston was placed on administrative segregation at BCF because "the intel report indicate[d] Johnston's possible involvement in the assault of another inmate while housed at SMPRU." ECF No. 18-3, p. 10. Specifically, inmate Ravelle Gray stated that an unidentified inmate entered his assigned dorm and threw hot liquid on him as he slept, burning his face, hands, and chest. *Id.* at p. 8. Gray believed that that Johnston was a member of the Murder Inc. gang and had ordered the other inmate to assault him. *Id.* Gray related that he and Johnston previously had been involved in a verbal dispute about a football game. *Id.* A confidential source confirmed that Johnston ordered the assault on Gray. *Id.*

Johnston's medical records from January 4, 2017 to February 2, 2017 did not document any history of physical complaints. *See* ECF No. 13. On January 10, 2017, Johnston asked to be seen by medical for depression. *Id.* at pp. 4-6. Johnston remained at BCF on administrative segregation until February 2, 2017, at which time he was transferred to ECI. ECF No. 18-2. While at ECI, Johnston was housed in general population. *See* ECF No. 9. Johnston remained at ECI until about March 1, 2018, when he was transferred to Dorsey Run Correctional Facility. *See* ECF No. 24.

## II.     Standard of Review

Defendants seek dismissal or, in the alternative, summary judgment in its favor. When reviewing a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court confines its analysis to the four corners of the Complaint, accepting all well-pleaded allegations as true and drawing all inferences in the light most favorable to the plaintiff. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005); *Ibarra v. United States*, 120

3

F.3d 472, 474 (4th Cir. 1997). A complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although courts should construe pleadings of self-represented litigants liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), unsupported legal conclusions, *Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), and conclusory factual allegations devoid of any reference to actual events, do not suffice, *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

Where, as here, a party seeks summary judgment pursuant to Federal Rule of Civil Procedure 56(a), the movant must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). Importantly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Rather, a reviewing court has an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). "A party opposing a properly supported motion for summary judgment 'may not rest upon the

mere allegations or denials of his pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting Fed. R. Civ. P. 56(e)). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 249-50. Johnson does not object to this Court's construing the Defendants' motion under either standard; nor does he maintain that additional facts in discovery are necessary to obtain full resolution of the claims.

## III. Analysis

Defendants raise a series of arguments to defeat Johntons claims. ECF No. 18. The Court considers each in turn.

### A. Eleventh Amendment Immunity

The DOC contends that it is immune from suit pursuant to the Eleventh Amendment to the United States Constitution. The Court agrees. Pursuant to the Eleventh Amendment, a state, its agencies and departments are immune from suits in federal court brought by its citizens or the citizens of another state, absent consent to suit. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). The State of Maryland has not waived its immunity under the Eleventh Amendment to suit in federal court. Therefore, DOC, as a state agency, is immune from suit in this Court. Accordingly, Johnston's claims against the DOC will be dismissed.

### B. Liability under 42 U.S.C. § 1983

Defendants next contend that none can be liable for any §1983 causes of actionbecause they did not personally participate in the acts or omissions that are the subject of Johnston's claimed constitutional violations. Liability under § 1983 attaches where a defendant participates in the conduct that violated a plaintiff's constitutional rights. *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001). A supervisor cannot be held responsible for the misconduct of his agents,

5

because *respondeat superior* liability is not available to § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004).

Johnston names Warden Foxwell and Attorney General Frosh in the caption of the Complaint, but does not detail any specific acts or omissions attributable to these Defendants which deprived Johnston of any constitutional rights. Nor has Johnston pleaded any facts to suggest that Foxwell or Frosh exhibited any supervisory indifference to, or tacit authorization of, any misconduct by their subordinates. *See, e.g., Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983) (stating that "[g]enerally, a failure to supervise gives rise to § 1983 liability, however, only in those situations in which there is a history of widespread abuse"). Claims against Foxwell and Frosh, therefore, fail as a matter of law. With respect to Defendants Burgess and Moorse, the Court has previously provided Johnston an opportunity to supplement his Complaint detailing what unconstitutional acts, if any, they had committed. ECF No. 3, n.1. Johnston has failed to do so. Accordingly, the § 1983 allegations fail as to Burgess and Moorse as well.

### C. Failure to State a Claim

Alternatively, even if Johnston's claims against any Defendants could somehow survive, he has failed to assert facts sufficient to demonstrate that his Due Process rights were violated. Johnston takes issue with his conditions of confinement while in administrative segregation. Conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution. *Rhodes v. Chapman*, 452 U. S. 337, 347 (1981). But restrictive or even harsh conditions "are part of the penalty that criminal offenders pay for their offenses against society." *Id*.

To establish that conditions of confinement amount to an Eighth Amendment violation, a prisoner must show that "the deprivation of [a] basic human need was *objectively* sufficiently serious," and that "*subjectively* the officials acted with a sufficiently culpable state of mind." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (emphasis in original) (citation omitted). A prisoner must do so by marshalling "evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993). Prison officials cannot be held liable for violating the Eighth Amendment unless they knew of, and then disregarded, an excessive risk to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Even when viewing all facts most favorably to Johnston, he has not sufficiently pleaded, nor does the record evidence demonstrate, that his placement in administrative segregation for less than a month resulted in any physical injury. Although Johnston requested to be seen on January 10, 2017 for depression, Johnston did not exhibit "any apparent signs or indications of acute distress" or "any signs of severe psychological impairment requiring acute mental health or psychiatric referral." ECF No. 13. Even viewing the facts most favorably to Johnston, insufficient evidence exists that his segregation conditions violated his Eighth Amendment rights.

To the extent Johnston challenges the same confinement condition on Due Process grounds, his claim likewise fails. Where state action imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," the prisoner's liberty interest may be implicated. *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). That said, placement into administrative segregation alone does not implicate such a liberty interest. *Beverati v. Smith*, 120 F.3d 500, 502, 504 (4th Cir. 1997); *Reffitt v. Nixon*, 917 F. Supp. 409, 413

(E.D. Va. 1996). This is so because it is not "atypical" for inmates to be placed on administrative segregation for any number of reasons. *Hewitt v. Helms*, 459 U.S. 460, 468 (1983).

It is uncontroverted that Johnston was placed in administrative segregation because he had reportedly ordered an assault on another inmate. Further, his placement in administrative segregation was limited in duration and in circumstances not significantly more onerous than those of general population prisoners. *See Beverati*, 120 F.3d at 504 (conditions of administrative segregation at Maryland Penitentiary); *Knox v. Lanham*, 895 F. Supp. 750, 758-59 (D. Md. 1995) (administrative segregation at ECI). Accordingly, even viewing the terms of his segregation most favorably to Johnston, he simply cannot sustain a Due Process violation.

To the extent that Johnston asserts his placement in segregation ran contrary to Defendants' own policies, his claim nonetheless fails. Procedural guidelines do not vest a prisoner with a liberty interest in adherence to those guidelines. Accordingly, any failure to follow regulations does not alone amount to a due process violation. *See Culbert v. Young*, 834 F.2d 624, 628 (7th Cir. 1987); *accord Kitchen v. Ickes*, 116 F. Supp. 3d 613, 629 (D. Md. 2015), *aff'd*, 644 F. App'x 243 (4th Cir. 2016); *see also Myers v. Kelvenhagen*, 97 F.3d 91, 94 (5th Cir. 1996); *accord Kitchen*, 116 F. Supp. 3d at 629 n.6. Summary judgment in Defendants' favor is thus warranted.

**IV.  Conclusion**

For the foregoing reasons, summary judgment is GRANTED in Defendants' favor. A separate order follows.

|  |  |
|---|---|
| 7/23/18 | /S/ |
| Date | Paula Xinis |
|  | United States District Judge |